**Dated: January 24, 2020**

**The following is ORDERED:**



*Tom R. Cornish*
TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:
**NICK ALLEN MABRAY,**            Case No. 19-81123-TRC
*dba* **Maybray Ranch LLC**            Chapter 12
*dba* **Mabray Cattle Company**
           Debtor.

## ORDER GRANTING PARTIAL RELIEF FROM STAY

Before the court is the Request for Entry of Order for Relief from the Automatic Stay Pursuant to the Court's Order of November 15, 2019 filed by Creditor RCB Bank (Docket Entry 57) and Objection filed by Debtor Nick Allen Mabray (Docket Entry 59). The court held an evidentiary hearing on this matter and, after reviewing the evidence and case file, has determined that cause exists to lift the automatic stay and order abandonment as to the livestock that secure RCB Bank's loans to Debtor. The automatic stay shall remain in effect as to the real estate and equipment securing the subject loans.

Debtor has a cattle ranching operation. RCB Bank holds a security interest in virtually all of Debtor's farm and ranch operations, including livestock, farm products, cattle, hay, horses,

real estate and equipment. Prior to bankruptcy, RCB Bank filed a replevin action in state court, and obtained a judgment and possession of some of Debtor's farm equipment. Debtor filed this chapter 12 case on September 27, 2019. Upon the filing of this case, RCB Bank returned property to the Debtor that it had replevined in the state court case. It believed that Debtor then sold some of that property at auction postpetition under his father's name. Therefore, on October 11, 2019, RCB Bank filed a Motion to Restrict Sale of Assets and Use of Cash Collateral and for Adequate Protection pursuant to 11 U.S.C. §§ 363 and 1205 (Docket Entry 21). RCB Bank also filed a Motion for Weekly Collateral Inspections (Docket Entry 26) citing pre and postpetition sales of collateral without permission.

Debtor did not file schedules with the Petition but did so on October 15, 2019 (Docket Entry 25). At that time on Schedule A/B, he listed 300 cows, 129 calves and 15 bulls, valued at $325,000. No horses were listed. Debtor listed monthly income of $120,000 and monthly expenses of $1,800. He filed amended schedules on November 21, 2019 (Docket Entry 48). Schedule A/B identified 300 cows, 120 calves, and 15 bulls, valued at $325,000. No horses were listed. He amended Schedule A/B again on January 8, 2020, one day before the evidentiary hearing (Docket Entry 79). This time the numbers of cattle decreased, but the value remained the same. Debtor listed 278 cows, 84 calves and 15 bulls, valued at $325,000. He also listed 35 horses valued at $100,000. Each time he filed schedules or amended schedules, Debtor represented that he did not have any funds on deposit at a financial institution but that he possessed $5,000 in cash on the date he filed bankruptcy.

A hearing was held regarding the Motion to Restrict Sale of Assets and Motion for Weekly Inspections. An Interim Order was entered on November 6, 2019 (Docket Entry 40) directing that the Debtor should not sell any of RCB's livestock collateral, use or dispose of cash

collateral without court approval or RCB Bank's consent. A final Agreed Order granting the Motion to Restrict Sale of Assets and Use of Cash Collateral and for Adequate Protection and the Motion for Weekly Inspections was entered on November 15, 2019 (Docket Entry 45). Therein, the parties agreed that Debtor must obtain the approval of this court and RCB Bank should he wish to sell collateral securing his debt with RCB Bank or use cash proceeds thereof, and must provide adequate protection to RCB Bank in the event he sells collateral or uses cash proceeds. The court also granted RCB Bank the right to make weekly inspections of Debtor's cattle, calves, bulls and horses and other RCB Bank collateral to assess the number and condition of the livestock and inspect the sufficiency of hay and feed. Debtor had the opportunity to explain any decrease in the number of livestock by providing evidence to RCB Bank, including texting photos documenting deaths. If Debtor failed to abide by the terms of the Order or caused actions detrimental to RCB Bank's collateral to occur, RCB Bank would submit an order modifying the automatic stay and directing abandonment of RCB Bank's collateral upon ten days' notice to Debtor.

RCB Bank conducted weekly inspections of Debtor's livestock, pastures and feed November 21 and 27, and on December 13, 2019. Inspections were performed on other dates as well. The November 21st and 27th inspections revealed that Debtor had 249 to 236 cows, 59 or 58 calves, 14 bulls, 39 horses, 51 feed bunks, 173 bales of hay, and approximately 300 pounds of food. These inspections were made on pastures that Debtor identified for the Bank. Debtor accompanied the Bank on December 13th and located 266 cows, 83 calves, 14 bulls, and 43 horses.

RCB Bank also discovered that in the summer of 2019 Debtor had applied for a loan with Ag America and represented that he owned cattle valued at $791,125, more than twice the value

he listed in his bankruptcy schedules as of September 27, 2019. He also represented that he owned horses valued at $292,500, yet he listed no horses in his schedules until amended on January 8, 2020. Believing that there was a significant reduction in the number of cattle since the Petition date, that their health was declining, and based upon other information in Debtor's schedules, RCB Bank determined that a detrimental event had occurred that triggered its entitlement to stay relief pursuant to the Agreed Order entered November 15, 2019. It filed its Request for Entry of Order for Relief from the Automatic Stay. Debtor filed an objection to this Request and obtained his own evaluation of his livestock from his veterinarian.

RCB Bank's representative, Richard Willhour, testified that Debtor owes the Bank over $2.2 million regarding three notes secured by all equipment, livestock and assets used in Debtor's farm and ranch operation as well as by Debtor's real estate. The interest rate on these notes is 11.25%. After Debtor defaulted on these notes in 2019, RCB Bank filed a replevin action in Cherokee County, Oklahoma, and obtained a judgment against Debtor. Debtor and his father live on the same ranch so RCB Bank was concerned that it properly identify ownership of equipment used on the ranch. Debtor, Debtor's wife Dayna Mabray, and Debtor's father Gene Mabray entered an agreement whereby they stipulated as to the farm equipment that was owned by Debtor, and Gene Mabray waived any ownership interests he may have claimed to the listed equipment. RCB Bank obtained possession of the equipment and prepared to sell it at auction. Debtor filed bankruptcy and requested that RCB Bank return the equipment; it did so. RCB Bank later learned that Gene Mabray had sold equipment at Chupp's Auction on October 4, 2019. RCB Bank obtained the auction tickets from Chupp's Auction reflecting the sale by Gene Mabray of a number of items. Willhour testified that the items sold by Gene Mabray were identical to the items which RCB Bank took possession of prepetition and returned to Debtor

postpetition. Debtor and his father disputed this testimony and pointed out common items listed on the auction tickets such as whiskey barrel planters that were not needed in a ranching operation. However, the list of equipment attached to the stipulation as well as a stipulation signed by Debtor of items returned to him postpetition appear to include many of the same items sold under his father's name at Chupp's Auction.

Willhour participated in the weekly inspections of Debtor's livestock. Willhour stated that Debtor kept him waiting for approximately 45 minutes on December 13, 2019, while he put out fresh feed. Mabray told him that 26 cows had died since he filed bankruptcy. Willhour, who has his own cattle herd, believes that the number of deaths reported is excessive for a herd of that size. He stated that the death rate should be around 2%.

Debtor's father, Gene Mabray, testified that he did not sell RCB Bank's collateral at Chupp's Auction. He stated that he sold his own property at Chupp's Auction and deposited the proceeds into Debtor's bank account. His goal is to assist his son in his operations however he can. Gene Mabray testified that he knew his son needed funds to make lease payments for pasture lands. Therefore, Gene Mabray obtained $81,000 cash from Pat Patterson, a friend who previously owned a bank located in Hulbert, Oklahoma. These funds were given to him to be used by Debtor. Patterson did not require these funds to be paid back and has more funds available if needed. Patterson provided these funds, according to Gene Mabray, because Patterson is fond of Debtor. Gene Mabray testified that he gave these funds to Debtor and they are currently in Debtor's possession, to be used however Debtor chooses.

Debtor testified that the $81,000 cash was in his father's possession and that he could get the money anytime he wanted. Debtor's monthly operating report for December of 2019 reflects that Debtor received $81,000 as "family assistance" and that he paid out $62,000 as lease

payments for his pastures. He testified, however, that he has not made the lease payments, claiming that he has until February 1, 2020, at which time he will make the payments to the Cherokee Nation along with a small late payment penalty. He stated that the information on the December Monthly Operating Report was due to a mistake made by his counsel. Debtor also received $14,000 from his mother in October of 2019 but that information does not appear anywhere in his monthly operating report for that time period. Debtor admitted to the court that he has two bank accounts, one he uses as his personal account and one for ranch operations. Debtor stated that the discrepancy in livestock numbers as of the Petition date and the weekly inspections made by RCB Bank is that the Bank representatives were just unable to find all of his cattle. He agreed that his number of calves should be increasing but that the inspections did not reflect an accurate count because the calves hide in thick grass. He also stated that some calves have died. He acknowledged that he directed the Bank to his pastures. He signed the December Inspection Report. He did not explain why he filed amended schedules the day before the hearing reducing the number of livestock from the previous schedules he filed.

Debtor stated that the cattle are in good condition. He offered a letter from his own veterinarian, Dr. Matthew Walkup, dated December 9, 2019. Dr. Walkup's letter does not include the number of cattle he observed, but he indicates that he observed cattle "around the house" which were in good to adequate condition, and cattle at the "Pow Wow" grounds which were in "subpar" condition. He also reported that there was adequate standing forage, that he saw 600+ bales of hay on site, and that protein supplementation should be started soon. Debtor stated that he has plenty of hay for his cattle but some is being stored on his aunt's property. He said that he was able to increase the number of hay bales from 173 in November to 520 in December by hiring Mark Davis to bale the hay for him, but Debtor did not pay Davis because

he lacks funds to do so. Debtor stated that he is licensed and bonded to buy and sell cattle and is currently working on commission. He is working for a man buying cattle and is being paid $25 per head. He also is working with another man buying cattle at $1 per 100 pounds. He stated that he has been prevented from working since July of 2019.

Bankruptcy Code § 1205(b) contains provisions for adequate protection in cases under Chapter 12. Under those provisions, a secured creditor may receive (a) cash payments only to the extent of any decline in the value of the collateral which occurs between the petition date and the confirmation of the plan, (b) a replacement lien only to the extent of that decline in value, (c) if the collateral is farmland, cash payments based on the rental value, net income and earning capacity of the collateral, or (d) "other relief." In this case, based upon information cited in RCB Bank's Motion to Restrict Sale of Assets and Motion for Weekly Inspections, the court has ordered that Debtor may not sell cattle without permission or otherwise use RCB Bank's collateral without permission of RCB Bank and this court. Failure to abide by the terms of this agreement will result in termination of the automatic stay pursuant to 11 U.S.C § 362(d). Based upon weekly inspections, Debtor's herd has declined since the petition date. Debtor has not offered adequate protection for this decline in value nor offered a credible explanation for the decline. RCB Bank, pursuant to the parties' agreement and this court's Order, now seeks other relief in the form of stay modification. Although Debtor has filed a plan, it includes no feasibility analysis, liquidation analysis nor projected budget. His plan proposes semi-annual payments to RCB Bank beginning six months after confirmation. Other creditors will not be paid until twelve months after confirmation. Debtor has generated insufficient income other than a few thousand dollars from hauling and "family assistance" to support his ranching operation. Based upon his lack of income, it appears unlikely that he can confirm this plan.

The court finds that neither Debtor nor his father were credible witnesses. Debtor was vague and evasive throughout his testimony, whether under questioning from RCB Bank or his own counsel. He and his father offered contradictory information regarding the source and location of funds he said his father provided to him to make lease payments for his cattle operation. Debtor did not offer an adequate explanation for the decrease in the number of cattle. Nor did he offer an explanation of his failure to list horses, bank accounts, his domestic support obligation, failure to report $14,000 given to him by his mother, or why he reported that he made lease payments in December when, in fact, he did not. Neither this court nor any other bankruptcy court is a proper place for debtors to play fast and loose with the truth.

The decline in numbers in the cattle herd continues postpetition. Although Debtor disputed the decline in numbers, he offered no evidence of actual numbers, and only vague explanations for the decline. He stated that the number of cattle found during the Bank's weekly inspections in November 2019 was inaccurate because inspectors did not access all the pastures where the cattle grazed. However, Debtor accompanied the Bank's inspector for some of the November inspections and the entire December 13th inspection, signed the December 13th Inspection Report, and offered no evidence to refute the Bank's count. Debtor stated that part of the decline in numbers was due to the death of a cow and calf, and that he had photos proving this. However, he failed to present these photos as evidence. His own veterinarian described the condition of some of the herd as "subpar." Based on the numbers Debtor lists in the amended schedules the day before trial, there has been a decline in the herd from 278 cows, 84 calves and 15 bulls to 266 cows, 83 calves, 14 bulls and 43 horses as of December 13, 2019. Debtor has offered no explanation why he represented that he had cattle valued at $791,125 in the summer of 2019, and $325,000 at the petition date. The court is aware that the number of his herd will

fluctuate but given the wide variation in the decline in numbers – from 5% to 22% as reflected in his original schedules, his amended schedules and the various inspections − and lack of candor from Debtor, the court believes that RCB Bank's collateral is declining in value.  Such a decline is an event that triggers the lifting of the automatic stay pursuant to the terms of the Agreed Order entered November 15, 2019.  Further, Debtor has not made lease payments on his pastures, although he says he has the cash to do so, and is unable to pay for the hay needed.  Finally, the plan Debtor has proposed is unlikely to be confirmed due to Debtor's failure to show the ability to generate any definite or dependable income stream.  The court therefore concludes that the stay as to the livestock should be lifted.

The court does not arrive at this decision lightly.  It recognizes that the loss of an asset that is of importance to a chapter 12 debtor's operation could doom the prospect of a successful reorganization.  However, the court cannot sanction the decline of a secured creditor's collateral by a debtor who has shown no ability to generate sufficient income and fails to be honest with the court.

IT IS THEREFORE ORDERED that RCB Bank is entitled to relief from the automatic stay and abandonment as to Debtor's livestock pledged as collateral to RCB Bank, pursuant to the Order of November 15, 2019.  RCB Bank's Request for Entry of Order for Relief from the Automatic Stay Pursuant to the Court's Order of November 15, 2019 (Docket Entry 57) is therefore **granted as to Debtor's livestock.**

###